UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANTAVIS LAMARCUS SHANNON,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN Sgt.,<br>DENNIS REAGLE Warden,<br>LISA HAMBLEN H.S.A,<br><br>Defendants. | ) | No. 1:24-cv-00268-SEB-MG |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Dantavis Shannon, an Indiana Department of Correction ("IDOC") inmate, filed this action alleging deliberate indifference to his mental health needs in violation of the Eighth Amendment. Defendant Dennis Reagle has moved for summary judgment. Dkt. [99]. For the reasons below, that motion is **GRANTED**. Defendants Sgt. Martin and Lisa Hamblen have not moved for summary judgment; the claims as to these defendants will proceed to settlement or trial.

## I.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A

court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.
## Factual Background

Because Defendant Reagle has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Shannon and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

At the time in question, Mr. Shannon was incarcerated at Pendleton Correctional Facility ("Pendleton"). Dkt. 99-1 at 13 (Shannon deposition). Dennis Reagle was the Pendleton warden at the time. Dkt. 99-7 ¶ 1 (Reagle affidavit).

In November 2023, Mr. Shannon was in a restrictive housing unit at Pendleton as the result of a disciplinary conduct finding. Dkt. 99-1 at 24-25. On or about November 22, Mr. Shannon told a guard that he was hearing voices and having suicidal thoughts. *Id.* at 24. As a result, Mr. Shannon was moved to a different cell and placed on suicide watch. *Id.* at 27. Mr. Shannon was not allowed to bring any personal property with him to the new cell besides the clothes he was wearing. *Id.* at 31-32. However, at some point, an inmate who had cleaned Mr. Shannon's previous cell brought certain items to him at his new cell – including a Bible in which Mr. Shannon had hidden razor blades – at the direction of Pendleton guards. *Id.* at 33-34.

On November 23, Mr. Shannon asked non-defendant guard Sgt. Jugg for a suicide watch companion, but Sgt. Jugg denied the request. *Id.* at 45-46. After this denial, Mr. Shannon used the razor blades to cut his forearm. *Id.* at 39. Mr. Shannon described the cuts as "deep," but he did not require stitches. *Id.* at 40; dkt. 99-3 at 26 (medical records). After returning to his cell, Mr. Shannon again asked Sgt. Jugg for a suicide watch companion, and Sgt. Jugg again denied one. Dkt. 99-1 at 45-46.

On November 24, Mr. Shannon asked co-defendant Sgt. Chris Martin[1] for a suicide watch companion, showing Sgt. Martin one of the razor blades and saying he wanted to cut himself. *Id.* at 48; dkt. 2 at 3 (sworn complaint). Sgt. Martin responded by saying, "fuck you & your companion" and that "I hope you use [the razor] right." Dkt. 2 at 3; dkt. 104-1 ¶ 6 (Shannon

[1] Mr. Shannon named this defendant "Martinez" in his complaint but agreed during his deposition that the correct name is "Martin." Dkt. 99-1 at 47-48. The Court will direct the clerk to update Sgt. Martin's name on the docket accordingly.

affidavit). Mr. Shannon also spoke to co-defendant Health Services Administrator ("HSA") Lisa Hamblen that day about his suicidal thoughts, and she told him "I don't care what you do . . . I can't stop you from cutting or killing yourself." *Id.*[2] Mr. Shannon asserts that he did again cut himself after Sgt. Martin left his cell. Dkt. 104-1 ¶ 5. There is no record of Mr. Shannon receiving any medical treatment after this incident.

Mental health services at Pendleton are provided by Centurion Health and its employees Dkt. 99-7 ¶ 5. When an inmate is placed on suicide watch, they may be determined to require either "close" or "constant" observation, and that determination is made by Centurion medical staff. *Id.* ¶ 20; dkt. 99-4 at 9-10 (IDOC Suicide and Self-Injury Prevention Policy). According to IDOC policy, "Suicide Watch" consists of two possible levels: "close or constant." Dkt. 99-4 at 2. If an inmate is on "close observation," staff is supposed to conduct a visual check of the inmate at least every 15 minutes; "[c]amera surveillance or a Suicide Watch Companion may be used to supplement staff monitoring but not replace it." Dkt. 99-4 at 9. If an inmate is on "constant observation," staff or a suicide watch companion must maintain "continuous, one-to-one, line-of-sight, direct visual observation" of the inmate. *Id.* at 10. Also, IDOC policy states that a "Suicide Watch Companion" is an inmate who has been trained to assist staff in monitoring another inmate "who has been placed on Constant Observation." *Id.* at 2.

In addition, at the relevant time Warden Reagle had signed off on a "Suicide Watch Companion Program" for Pendleton. Dkt. 99-5. In part, it states that if an inmate is "placed on Suicide Watch status, the Shift Supervisor shall assign a trained Suicide Watch Companion to monitor the suicidal offender continuously and directly." *Id.* at 3. This policy itself does not define

[2] Sgt. Martin denies saying what Mr. Shannon alleges he said. Dkt. 99-9 ¶ 10. Correctly recognizing the conflicting sworn statements, Sgt. Martin has not moved for summary judgment. HSA Hamblen also has not moved for summary judgment.

"Suicide Watch status," or whether it includes an inmate on "close observation" status or only those on "constant observation" status.

On November 23 and 24, 2023, Mr. Shannon was on "close observation" status, not "constant observation" status. Dkt. 99-7 ¶ 18. Therefore, he was not assigned a suicide watch companion. *Id.* ¶ 22.

Warden Reagle denies having knowledge of any deficiencies in implementing IDOC and Pendleton polices and procedures regarding Mr. Shannon. *Id.* Mr. Shannon also has admitted that he never spoke or communicated with Warden Reagle regarding any concerns about the suicide cell he was placed in. Dkt. 99-1 at 54. Mr. Shannon has designated an affidavit signed by another inmate, William Holly, who served as a suicide watch companion at Pendleton when Mr. Shannon was there. Dkt. 104-1 at 3-4 (Holly affidavit). Mr. Holly asserts that on an unspecified date, he spoke to Warden Reagle about the poor conditions in the Pendleton suicide watch unit, including feces on the walls and uncleanliness throughout the unit. *Id.* at 3. Mr. Holly also states that he relayed Mr. Shannon's request for a suicide companion to his supervisors "Mr. O'Connor & Miss Little" but nothing was done. *Id.* Mr. Holly also asserts generally that the conditions and staffers in the suicide unit were poor, and "Ms. Little can confirm, 'I reported to her, face to face the conditions in G-Cell House, which she reported to the Superintendent. He knew about Shannon, he know the condition of G-Cell House.'" *Id.* at 4.

Mr. Shannon filed his complaint on February 9, 2024. Dkt. 2. After screening the complaint, the Court allowed an Eighth Amendment deliberate indifference claim to proceed against Warden Reagle based on the theory that he was "personally and directly responsible for developing a policy regarding suicide watch cells that he knew was inadequate for that purpose," which caused Mr. Shannon to suffer physical or psychological injury or both. Dkt. 13 at 4. The

Court also allowed deliberate indifference claims to proceed against Sgt. Martin and HSA Hamblen. *Id.* Warden Reagle only now moves for summary judgment. Dkt. 99. Mr. Shannon thereafter filed two motions for summary judgment, which are virtually identical, and which could be construed either as cross-motions for summary judgment or a response to Warden Reagle's motion. Dkts. 102, 104. HSA Hamblen moved to strike Mr. Shannon's motions. Dkt. 109. The Court **DENIES** HSA Hamblen's motion as unnecessary because Mr. Shannon's motions only seek summary judgment against Warden Reagle.

## III.
## Discussion

To violate a prisoner's Eighth Amendment rights in the delivery of medical care, including mental health care, prison officials must exhibit "deliberate indifference to an inmate's serious medical needs." *Riley v. Waterman*, 126 F.4th 1287, 1295 (7th Cir. 2025). To prevail on such a claim, the plaintiff must prove (1) that he had an objectively serious medical condition (2) to which prison officials were deliberately, that is subjectively, indifferent." *Id.* (citation modified). He must also prove that the defendant's "deliberate indifference actually *caused* his injury." *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023) (citing *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011)).

To constitute "deliberate indifference," a prison official must "know of and disregard a substantial risk to the inmate's health." *Riley*, 126 F.4th at 1295. It "entails something more than mere negligence but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021) (citation modified); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Evidence that the defendant responded reasonably to the risk, even if he was ultimately unsuccessful in preventing the harm, negates an assertion of deliberate indifference." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (citation omitted). An official who is responsible for setting prison policy,

such as a warden, "can be held liable for a constitutional violation if []he is aware of a systematic lapse in enforcement of a policy critical to ensuring inmate safety and does nothing." *Passwater v. Pretorius*, 183 F.4th 531, 539 (7th Cir. 2026).

"'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered independently. *Id.* Mr. Shannon is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.* Furthermore, Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that affidavits in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "'[A]lthough personal knowledge may include reasonable inferences, those inferences must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Weaver v. Speedway, LLC*, 28 F.4th 816, 825 (7th Cir. 2022) (quoting *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (internal quotation omitted); *see also* Fed. R. Evid. 602. "A party may not rely on inadmissible hearsay to avoid summary judgment." *MMG Fin. Corp. v. Midwest Amusements Parks, LLC*, 630 F.3d 651, 656 (7th Cir. 2011).

Mr. Shannon has failed to designate sufficient evidence from which a reasonable jury could find that Warden Reagle was personally responsible for any deficiencies in IDOC and Pendleton suicide watch policies that allegedly injured Mr. Shannon – either with respect to the policies

themselves, or their implementation. The main focus of Mr. Shannon's argument appears to be that he should have been provided with a suicide watch companion when he requested one. But Warden Reagle did not participate in drafting the IDOC Suicide and Self-Injury Prevention policy. That policy only requires assignment of a suicide watch companion if medical staff determine that an inmate should be a "constant observation," not just "close observation." The Pendleton suicide watch companion policy that Warden Reagle signed is consistent with IDOC policy, providing further details and guidelines for implementation of the IDOC policy. That is, although the Pendleton policy itself does not define what a "Suicide Watch" is, the IDOC policy does and it can be presumed that the Pendleton policy was meant to parallel IDOC policy, which is that a suicide companion is only mandated for inmates on "constant observation." These policies were followed in Mr. Shannon's case.

Mr. Shannon also seems to suggest, particularly through Mr. Holly's affidavit, that the overall conditions in the suicide watch unit were poor. In other words, it may be that Mr. Shannon believes the overall conditions of confinement in the unit violated the Eighth Amendment. *See Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (describing elements of conditions of confinement claim). However, Mr. Shannon did not make allegations of this kind in his complaint, nor did the Court identify any general conditions of confinement claims in its screening order.

Finally, there is a lack of admissible evidence that Warden Reagle knew of Mr. Shannon's particular predicament in late November 2023. Warden Reagle denies any such knowledge. Mr. Holly's affidavit refers to talking to a " Ms. Little" about Mr. Shannon, and that she could "confirm" that Warden Reagle "knew about Shannon." Dkt. 104-1 at 4. However, whatever Ms. Little supposedly could "confirm" is inadmissible hearsay. She herself has not submitted a sworn statement indicating that she spoke directly to Warden Reagle about Mr. Shannon. Altogether,

there is merely speculation that Warden Reagle should have known about Mr. Shannon's situation, given his supervisory position, but that clearly is insufficient to sustain a claim against Warden Reagle. *See, e.g.*, *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."); *cf. Passwater*, 183 F.4th at 539-40 (concluding prison warden might have been deliberately indifferent to "systemic noncompliance" with suicide companion watch policy, where warden received email thread about noncompliance, but suicide companion's failure to watch plaintiff as required by policy was an "intervening act" that negated warden's liability for plaintiff's suicide attempt).

In sum, there are no disputes as to any material facts pursuant to which Warden Reagle could be found liable for any harm to Mr. Shannon, and Warden Reagle is entitled to judgment as a matter of law.[3]

## IV.
## Conclusion

Warden Reagle's motion for summary judgment is **GRANTED**. Dkt. [99]. Mr. Shannon's motions for summary judgment, and Lisa Hamblen's motion to strike those motions, are all **DENIED**. Dkts. [102], [104], [109]. The **clerk is directed** to terminate Dennis Reagle as a defendant on the docket. The **clerk is directed** to change the name on the docket of Sgt. "Martinez" to "Chris Martin."

Mr. Shannon's claims against Sgt. Martin and Ms. Hamblen remain pending and will be resolved by settlement or trial. The Court prefers that Mr. Shannon be represented by counsel for

[3] Having found no constitutional violations by Warden Reagle as to Mr. Shannon, the Court need not address whether Warden Reagle is entitled to qualified immunity.

the remainder of this action. The **clerk is directed** to send Mr. Shannon a motion for assistance recruiting counsel with his copy of this Order. Mr. Shannon has **through October 13, 2026**, to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed pro se. Once the motion has been ruled on and counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

**IT IS SO ORDERED.**

Date: 9/21/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

DANTAVIS LAMARCUS SHANNON
267900
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only